## SMITH v. CLEAVER et al.

Findings by the court as to the ultimate facts are sufficient, and are not required as to those facts which are evidentiary.

The doctrine of constructive fraud as applied to a merely negligent failure of a grantee to record his conveyance does not render the deed itself void, but only estops the grantee from claiming his rights under the deed, to the prejudice of creditors of grantor.

In the absence of an actually fraudulent intent, the withholding from record or concealment of a deed does not render the deed itself fraudulent or void, but it must have been withheld with fraudulent intent to assist the grantor to hinder, delay, or defraud his creditors.

A grossly careless or negligent concealment or withholding of a deed from record, with no intent to defraud, may give the grantor a fictitious credit, and mislead those who actually extend credit on his apparent title, and, in such case, the grantee would be guilty of constructive fraud in attempting to assert his title against such creditors, and would be estopped by his negligence to do so to their prejudice.

An estoppel, to be available, must be pleaded.

To constitute an estoppel, it is not sufficient that the language, acts, or conduct of one might have misled another, to his prejudice; but such person must have been in fact misled or induced to do something he would not otherwise have done.

(Opinion filed, April 26, 1910.)

Appeal from Circuit Court, Beadle County. Hon. CHAS. S. WHITING, Judge.

Action by Jennie E. Smith against John A. Cleaver and others. From a judgment for plaintiff and an order denying a new trial, defendants appeal. Affirmed.

*Henry C. Hinckley* and *W. A. Lynch*, for appellants.

A concealed deed, and witholding instruments from record is a fraud. Lyon v. Plankinton Bank et al, 15 S. D. 400; Ellis et al. v. Musselman et al., 85 N. W. 75; National State Bank v. Sanford Fork and Tool Co., 60 N. E. 699; Steele et al. v. Coon et al.,

43 N. W. 411; Blennerhassett v. Sherman, 105 U. S. 1080; Corwine v. Thompson National Bank, 105 Fed. 196; Stock Growers Bank v. Newton, 13 Cal. 245; Curtiss v. Lewis, 74 Conn. 367; Lewis et al. v. Lanphere, 79 Ill. 187; Adams et al. v. Curtiss et al., 36 N. E. 1095; Bump on Fraud. Con. 39, 41, and 51; Moore on Fraud. Con. Vol. 1, 252, Vol. 2, 259; Hopkins et al. v. Joyce et al., 47 N. W. 722. The fraud was not in taking title to said land, but in allowing her title to remain concealed and in failing to record her deed until after appellants had rendered their services in making sale of 800 acres of said land as the property of her husband. And in so doing she committed a fraud. Cowdry v. Vandenburgh, 101 U. S. 572; American Freehold Land and Mortgage Co. v. Maxwell, 22 So. 751; Humes v. Scruggs, 94 U. S. 51; Warner v. Watson et al., 17 So. 654; Hockett v. Bailey, 86 Ill. 74; Jones et al. v. King et al., 86 Ill. 225; Quick v. Milligan, 9 N. E. 392. By these acts of hers respondent clothed her husband with all the legal indicia of ownership. She should have known, if she had any interest, that her conduct would increase the credit of her husband; she was guilty of gross negligence in failing for so long a period of time to assert her interest, if she had any, and she is now estopped by her conduct from so doing in this case. Sumpter et al v. Arkansas National Bank, 62 So. Western, 577; Betts v. Letcher et al., 1 S. D. 182; Bunch v. Schaer, 48 So. Western, 1070; Savage v. Murphy, 90 Am. Dec. 733; Cooper et al. v. Davison et al., 5 So. 650. A judgment creditor has a right to sell lands under execution, notwithstadning they have been fraudulently alienated. Willard v. Masterson, 160 Ill. 443; Spindler v. Atkinson, 3 Md. 409; Campbell v. Jones, 25 Minn. 155; Jackson v. Holbrook, 32 N. W. 852; Thomason v. Neeley, 50 Miss. 380; Gallam v. Perrie, 47 Miss. 131; Partee v. Mathews, 53 Miss. 140; Allen v. Berry, 50 Mo. 90.

*Sterling & Clark* and *Crawford, Taylor & Fairbank,* for respondent.

That the fact that a husband conveyed land to his wife without consideration, while deeply in debt, was but a circumstance to be considered with other evidence in determining the question of

fraudulent interest. Williams v. Harris, 4 S. D. 22; Randall v. Burt Trip, 4 S. D. 337; Wright v. Lee, 10 S. D. 263; Aldons v. Olverson, 17 S. D 190; First State Bank of Elkton v. O'Leary, 13 S. D. 204. The plea of estoppel under the code practice must be specifically pleaded. Encyc. of P. & P., Vol. 8, 7. The conduct alleged to constitute an estoppel must be relied upon and acted upon by the party who sets it up and who must have acted upon it in such a manner as to change his position for the worse. Great Western Mining Company v.Woodman, 20 Pac. 771; Trenton Bank Co. v. Duncan, 86 N. Y. 221. To raise an estoppel the language or conduct must be the direct motive or inducement to the outlay. Jones v. Cowles, 26 Ala. 612; Carp. v. Stillwell, 11 N. Y. 61. To sustain an estoppel because of an omission to speak there must be both the specific opportunity and the apparent duty to speak. The person maintaining silence must have known that some one was relying thereon and was either acting or about to act as he would not have done had the truth been told. Hunt v. Riley, 96 Am. St. Rep. 707.

SMITH, J. This is an appeal from a judgment for plaintiff and from an order overruling defendant's motion for a new trial. The action is on the equity side of the court; the plaintiff seeking relief against the defendants Cleaver and Lapier and one Chas. E. Young, as sheriff of Beadle county. Plaintiff seeks to enjoin the sale of a certain quarter section of land under an execution issued upon a judgment in favor of Cleaver and Lapier against F. M. Smith, her husband. The action was tried by the court, who made findings of fact and conclusions of law, and entered a judgment awarding plaintiff the relief prayed for. The assignments of error are very numerous, a large number of them relating to rulings by the trial court on questions of evidence. We have given these various rulings careful consideration, and are of opinion that none of them are prejudicial to appellants' rights or would warrant a reversal of the case. A review of the several rulings would serve no useful purpose, and we shall not attempt it. The other questions presented relate to the refusal of

the court to make findings requested by appellants, and also the alleged failure of the court in the findings adopted to cover material issues.

The complaint alleges, in substance: That the defendants Cleaver and Lapier were partners doing business under the firm name of Cleaver & Lapier, and that the defendant Chas. E. Young was sheriff of Beadle county. That on the 18th day of March, 1907, in an action in the circuit court of Beadle county, the defendants Cleaver and Lapier recovered against F. M. Smith, husband of plaintiff, a judgment in the sum of $872.94. That on the 15th day of October, 1907, an execution was issued upon said judgment and delivered to the defendant Young as sheriff, who has levied upon a certain quarter section of land, which is the property of the plaintiff, and has given notice of the sale of said property March 19, 1907. Plaintiff specifically alleges that said F. M. Smith was not at the time of the entry of said judgment nor at the time of such levy and notice, and never was, the owner of said quarter section of land; that plaintiff is and was at the time of said levy and judgment, and for a long time prior thereto, the owner in fee simple of said land; and that the judgment against F. M. Smith is not a lien upon same, and that the defendant Young as sheriff is without right or authority to levy upon or sell the same. Plaintiff further alleges that she became the owner of said land about the 2d day of July, 1901, by purchase from one Alexander, and that her purchase was made in good faith for a consideration paid by her out of her own money, and that title thereto was taken in the name of said F. M. Smith by a deed, which was recorded in the office of the register of deeds of said county on August 19, 1901. Plaintiff further alleges that on the 17th day of September, 1901, the said F. M. Smith by a warranty deed duly transferred the land levied upon, together with other lands, to this plaintiff, and that said conveyance was duly made pursuant to the original understanding between her husband and herself that all of said property belonged to her; that the deed from said F. M. Smith to plaintiff was recorded in Beadle county on the 15th day of September,

1907, long prior to the judgment of Cleaver and Lapier against the said F. M .Smith; and that the delay in recording said deed was due wholly to forgetfulness and inadvertence on her part. Plaintiff further alleges that, unless restrained by an order of the court, defendant Young will sell said premises for the purpose of satisfying said judgment and execution against F. M. Smith, and that such sale will cause irreparable loss to the plaintiff and create a cloud upon her title, and that she has no adequate remedy at law. Plaintiff demands judgment that the defendants have no authority to cause said premises to be sold in satisfaction of said judgment; for an order and judgment that the defendants and each of them be enjoined and restrained from selling said premises; and that the title of plaintiff be quieted against any and all claims of defendants Cleaver and Lapier; also for general relief.

Defendants by their answer admit the issuance and levy of the execution upon the lands described in the complaint, but deny that plaintiff is the owner of said land or has any title thereto, or that she was ever the owner thereof, but allege that her husband, said F. M. Smith, is and was at all times mentioned the lawful and rightful owner thereof, deny that the plaintiff paid for said lands out of her own money, but allege that the deed from the said F. M. Smith to plaintiff was executed and placed of record with the sole intent of defrauding, hindering, and delaying the creditors of plaintiff's husband, and more especially the defendants Cleaver & Lapier in the collection of their judgment against the said F. M. Smith. Defendants further allege that the said F. M. Smith early in 1901 purchased with his own money a tract of land in Beadle county, aggregating more than 1,200 acres, for a consideration of about $12,000, and that the land described in the complaint is part of the land so purchased; that title to all of said land was taken in the name of F. M. Smith, and the deeds therefor placed of record in Beadle county; that the title to said lands remained in F. M. Smith, until August 8, 1906, when there was filed for record a deed from him and the plaintiff his wife to one Ennenga for 800 acres of said land, which lands defend-

ants Cleaver and Lapier had sold to said Ennenga under a written contract with F. M: Smith, in which said Smith repre-sented and alleged himself to be the owner of said 800 acres; that on February 15, 1907, said Smith caused to be filed for record in the register of deeds office a deed from himself to his wife, purport-ing to have been executed December 7, 1901, of said 800 acres, also a deed of other lands, including the land described in plain-tiff's complaint, for a consideration of $9,800; that on February 15, 1907, there was filed for record in said office another deed from said F. M. Smith to plaintiff conveying other lands; that the two conveyances last above mentioned were fraudulent and void. Defendants allege that upon said sale of 800 acres said Ennenga executed and delivered to said F. M. Smith notes and mortgage to secure a large amount of the unpaid purchase price thereof, which on February 15, 1907, he assigned to the plaintiff, which assignment was fraudulent, and made with intent to cheat and defraud creditors of said F. M. Smith, and particularly the defendants Cleaver and Lapier, all of which plaintiff well knew. Defendants further allege that said F. M. Smith caused the said lands to be stocked with cattle and other stock, and cultivated portions thereof, and exercised full and complete ownership over all of said lands; that he made leases thereof in his own name, disposed of the products of said land and the stock raised thereon as his own property, and that during all of said time plaintiff, his wife, was living at Vermilion in said state, and in no manner, either by word or deed, claimed or represented herself to be the owner of said land or any part thereof, and allowed her husband to hold himself out to these defendants and the public as owner of said lands, including the land referred to in the complaint; that on February 28, 1906, said F. M. Smith entered into a writ-ten contract with the defendants Cleaver and Lapier authorizing them to sell said 800 acres, stating in said contract that he was the owner thereof; that defendants sold said 800 acres under said contract, and said Smith and his wife, the plaintiff, conveyed the same to defendant's buyer, George Ennenga; that said Smith failed to pay defendants the amount due as commission for mak-

ing said sale; and that the judgment against said F. M. Smith was for the said commission. The defendants further allege that the said F. M. Smith on February 28, 1906, entered into another contract with Cleaver and Lapier for the sale of the land described in plaintiff's complaint, wherein he represented himself to be the owner of said land, and authorized these defendants to make sale thereof; that during all of said time the record title thereof remained in F. M. Smith, as plaintiff well knew; and that plaintiff knew her husband, F. M. Smith, had entered into said contract, and that the defendants Cleaver and Lapier were rendering services in and endeavoring to sell said land as the land of her said husband, and knew that defendants obtained the purchaser and made the sale of said 800-acre tract, and during all of said time failed to announce to the defendants her ownership of said lands or any portion thereof, and did absolutely nothing in the way of exercising ownership of said lands, and did not pay the taxes or receive the proceeds of products thereon, but permitted her husband during all of said time to represent himself as the owner of said lands.

Appellant's proposed findings of fact which were refused by the court follow very closely the allegations of the answer, as above set forth. It will be observed that the theory of appellant's answer is that the deed from F. M. Smith to the plaintiff was fraudulent and without consideration; that the lands were paid for by him, and not by the wife; that the deed to the wife was fraudulently withheld from record by her; and that she knowingly permitted him to hold himself out to the world as the owner of the land. Upon the issues thus presented the trial court made the following findings of fact, which are fully sustained by the evidence:

"(1) That Mrs. Jennie E. Smith paid for all of said land with her own money. That her husband, F. M. Smith, acted as her agent, and negotiated the purchase of said land in Huron, S. D., while this plaintiff was at her home in Vermillion, Clay county, S. D., and that the title to all but two of the nine quarters purchased at the time was taken in the name of F. M. Smith

without the knowledge of the plaintiff, and the land involved in this action was taken in the name of F. M. Smith.

"(2) On the 17th day of December, 1901, the said F. M. Smith made, executed, and delivered to plaintiff a deed of all of the lands so purchased by her, but taken in his name, being seven quarters in all, including the land involved in this suit. That, after this deed was delivered to the plaintiff, she placed it in her bank box, and that it remained there until about the 15th of February, 1907, when she sent it to Huron and had it recorded in the register of deeds office, Beadle county, S. D., in Book 154, p. 330.   *   *   *

"(6) The court further finds that there was no fraud in the making and the delivery of the deed of the land in controversy on the 17th day of December, 1901, from F. M. Smith to Jennie E. Smith, and that there was no fraud in the recording of said deed by her on the 15th day of February, 1907; that she was the real owner of said land; that she paid for it with her own money, and had a perfect right to demand, receive, and record the deed for said land from F. M. Smith.

"(7) The court further finds that Jennie E. Smith was the owner in fee of said lands on the date of entry of judgment against the said F. M. Smith, towit, the 18th day of March, 1907, the date of the levy of the execution thereon, and that the said F. M. Smith had no interest therein."

And as a conclusion of law the court found: "(3) That the conveyance of said land from F. M. Smith to Jennie E. Smith on the 17th day of December, 1901, was not a fraud upon creditors of F. M. Smith, but was made in good faith and for a valuable consideration." It will be observed that every material issue presented by the answer is fully covered by these findings of the court.

Appellants' proposed findings, other than those covered by the findings above quoted, relate solely to allegations of matters in the answer which are purely evidentiary, and not the ultimate facts. All these evidentiary circumstances were received in evidence by the court, and were doubtless given their legitimate

weight and effect in the determination of the final and vital issue of fraudulent conveyance. The proposed findings of fact which were refused are made up of numerous details as to the conduct of the husband and wife in relation to the lands. We cannot refer to each of them. But appellant's proposed finding No. 1 illustrates the character of the others, viz., "that Jennie E. Smith, the plaintiff, is the wife of F. M. Smith, and was his wife in the year 1901, and long prior thereto." The relationship of these persons was a proper matter of evidence, and had its bearing upon the transactions between them as affecting the husband's creditors, but the court was not required to make a finding as to such evidentiary facts. Findings as to the ultimate facts are sufficient. Weneke v. Hall, 17 S. D. 305, 96 N. W. 103. In the case of McKenna v. Whittaker, 9 S. D. 442, 69 N. W. 587, this court said: "Upon the trial of a question of fact by the court, its decision must be given in writing and filed with the clerk. In giving the decision, the facts found and conclusion must be separately stated. Laws 1893, c. 72; Comp. Laws 1887, § 5067. This statute does not contemplate a recital of merely evidential facts, or the language of the pleadings. It requires a statement of the ultimate facts responsive to the issue arising upon the pleadings—a finding upon each material issue of fact involved in the action. Gull River Lumber Co. v. School District No. 39, 1 N. D. 500, 48 N. W. 427; Anderson v. Alseth, 8 S. D. 240, 66 N. W. 320; Jandt v. South, 2 Dak. 46, 47 N. W. 779." It is apparent that a proper distinction exists between a fact which is material under the issues and a material issue of fact under the pleadings. But the rule requiring the court to make findings upon every material issue presented by the pleadings does not require the court to make findings upon issues not raised by the pleadings. Appellants appear to have abandoned entirely the allegation in the answer that the deed from Smith to his wife was fraudulent in its inception. In appellants' brief it is said: "The fraud was not in taking title to said land, but in allowing her title to remain concealed, and in failing to record her deed until after appellants had rendered their services in making sale

of 800 acres of said land as the property of her husband, all of which respondent did. That she permitted her husband to represent himself as the owner of said lands, and thereby obtain credit for himself, and by reason of which ownership appellants contracted with him for the sale of said lands, and were induced to render their services in making a sale thereof."

Appellants' further contention rests upon the alleged fraudulent conduct of plaintiff in concealing and withholding her deed from record. The findings of the trial court, which are sustained by undisputed evidence, establish the fact that the lands referred to were purchased with the wife's money; that the deed from her husband was made and delivered to her in good faith, and for the sole purpose of vesting in her the legal title to such land; and that her act in placing her deed of record was not for the purpose of hindering or delaying the creditors of the husband, but because she was the real owner of the lands, and had a perfect right to record the deed. These findings eliminate every possible contention of actual fraud on the part of the wife. But the question remains as to the effect upon creditors of the husband of the neglect or failure of the wife to place her deed of record. The failure of an honest grantee to place his deed of record is sometimes held to operate as an estoppel upon the grantee in favor of the creditors of the grantor. In such cases the estoppel is founded upon the negligent conduct of the grantee, which is held to constitute a constructive fraud upon the creditors of the grantor. A constructive fraud under the law of this state consists "in any breach of duty which, without an actual fraudulent intent, gains an advantage to the person in fault, or any one claiming under him by misleading another to his prejudice, or to the prejudice of any one claiming under him." Civ. Code, § 1202. But the doctrine of constructive fraud, as applied to the case of the merely negligent failure of a grantee to record his conveyance, does not render the deed itself void, but only estops the grantee from claiming his rights under the deed, to the prejudice of the creditors of the grantor. Hence it is universally held by the courts that withholding a deed or mortgage from record cannot

be deemed fraudulent unless the grantor or mortagor is thereby enabled to obtain and does obtain a fictious credit. 20 Cyc. 552, and cases cited. This class of cases should be clearly distinguished from those which hold that the intentional withholding of a deed or mortgage from record with intent to hinder, delay, or defraud the creditors of the grantor is competent evidence upon the question of actual fraud. The language used by law writers on this subject is not unfrequently inapt, if not inaccurate and misleading. In Bump on Fraud Con. pp. 39, 41, it is said: "A deed not at first fraudulent may become so by being concealed, because by its concealment persons may be induced to give credit to the grantor. The omission to place a deed on record is an instance of concealment within the rule." In the absence of an actually fraudulent intent, the withholding from record or concealment of a deed does not render the deed itself fraudulent or void. Such deed must have been withheld with fraudulent intent to assist the grantor to hinder, delay, or defraud his creditors. But even the grossly careless or negligent concealment or withholding of a deed with no intent to defraud anybody may give the grantor a fictitious credit, and mislead those who actually extend credit on his apparent title, and, in such case, the grantee would be guilty of constructive fraud in attempting to assert his honest title against such creditors, and would be estopped by his his own negligence from asserting his title to their prejudice. The case of Hopkins v. Joyce, 78 Wis. 443, 47 N. W. 722, cited by appellant, illustrates this doctrine. That court says: "The learned counsel for appellants seems to think the plaintiff cannot prevail in the action unless they show that Mrs. Joyce was an active participant in some scheme of fraud known to her to be such. This is clearly a mistake. We do not suppose she ever had a thought of defrauding any person, but she confided in her husband, and allowed him to retain the title to lot 2, and deal with the lot as his own, merely because he desired her to do so, without a thought or suspicion that he would so deal with it as to raise equities in others superior to her own; but, having voluntarily put it in the power of her husband to do so and he having

done so, it would be a fraud upon those who dealt with him on the faith of his apparent ownership of the lot to permit her now to assert her alleged equitable interest in the lot." National Bank v. Sandford Fork & Tool Co., 157 Ind. 10, 60 N. E. 699; Corwine v. Thompson Nat. Bank, 105 Fed. 196, 44 C. C. A. 442. In the latter case the court says: "Upon the evidence it seems manifest that Barger availed himeslf of the authority delegated to him by his wife to obtain a fictitious credit for John W. Corwine by representing him to be perfectly good and by actively concealing the deed to her and by procuring the withholding from the records, not only of that deed, but of the others. For this, however innocent she may in fact be (and there is no proof that she knew anything about it), Mrs. Barger is so far responsible for the acts of her husband, acting as her agent, as to be prevented and estopped from claiming the interest in the land conveyed to her by her father as against the complainants and cross-complainants, whatever may, as between the later, be hereafter determined to be their respective priorities in right." Many other decisions are cited by appellant, but the foregoing excerpts are sufficient to make clear the application of the doctrine of constructive fraud by conduct of the innocent grantee, and the resulting estoppel. In the case of Roblin v. Palmer, 9 S. D. 36, 67 N. W. 949, this court held: "Under no statutory provision is an unrecorded deed void as against creditors of the grantor subsequently attaching, and the trial court was right in its conclusion that the title acquired by an unrecorded deed is prior and superior to that obtained by a purchaser at an execution sale under an attachment." Commenting on this case, Justice Corson, in the case of Hickox v. Eastman, 21 S. D. 591, 114 N. W. 706, says: "Applying the law as laid down in that case to the case at bar, the fact that the title to the property was in Grable at the time the attachment proceedings were commenced did not prevent the corporations from asserting their rights to the property and holding the same as against the attaching creditors. It is clear from the language of the Code that it is only the property actually owned by the debtor that can be applied in payment of the judg-

ment in attachment proceedings, unless there have been such acts on the part of the person claiming the title as would estop him in equity from asserting his title to the same. But, as before stated in the case at bar, there seems to be no evidence in the record showing any such acts on the part of the owners as would estop them, even if the acts constituting an estoppel had been pleaded. The mere fact that the corporation omitted to secure from Grable the legal title before the warrant of attachment was issued and levied is not sufficient to deprive them of their rights to the property in the absence of any proof that their conduct was such as to actually influence the judgment attaching creditor to his prejudice." It is the settled law of this state that an estoppel must be pleaded where the opportunity is given, or that such plea is not available, even though the evidence would establish such defense. In McQueen v. Edgemont, 20 S. D. 378, 107 N. W. 208, this court says: "It is contended by the respondent that the defendant is not in position to avail itself of an estoppel on the part of the plaintiff for the reason that it has not pleaded the same as a defense to the action. We are inclined to take the view that this contention of the respondent is correct, and that, the defendant not having pleaded an estoppel either in its original answer or by amendment thereto, it is now precluded from availing itself of any such defense, even had the evidence in the case established such a defense. The rule seems to be quite uniform that an estoppel to be available to a party must be pleaded when the party has an opportunity to do so." And in the same case, affirming the rule laid down in Sutton v. Consolidated Apex Mining Co., 15 S. D. 410, 89 N. W. 1020, this court said: "In order to constitute an estoppel, it is not sufficient to show that the language, acts, or conduct of one might have misled a party to his prejudice; but it must affirmatively appear that such party was in fact misled or induced by such acts, conduct, or language to do something that he would not otherwise have done except for such acts, langauge, or conduct."

A careful examination of the answer of defendant, of the proposed findings, and of the whole evidence fails to reveal alle-

gations in the answer or evidence, or even recitals in the proposed findings, sufficient to constitute an estoppel. It is neither alleged in the answer nor shown by the evidence that Cleaver and Lapier were in fact misled, or induced by the failure or neglect of plaintiff to place her deed of record, to do anything they would not otherwise have done. There is no allegation or proof that the defendants were induced to rely, or did rely, upon the apparent ownership of the lands by F. M. Smith in extending services on credit, for which they obtained judgment against him. And, unless such fact affirmatively appears, there can be no estoppel. The whole of the facts and the allegations of defendant's answer are summed up apparently in the concluding words of defendant's proposed finding of fact No. 16, as follows: "In short, plaintiff permitted and allowed her husband, the said F. M. Smith, to represent himself to the public, and more particularly as concerns the defendants Cleaver and Lapier, as the owner of the said seven quarter sections of land aforesaid, which includes the land described in plaintiff's complaint in this action.' We conclude, therefore, that the findings of the court cover all the material issues raised by the pleadings and are fully sustained by the evidence, and that the conclusions of law and judgment are correct. The judgment and order of the trial court are affirmed.

WHITING, P. J., not sitting.