23CA2047 Johnson v Ortiz 11-21-2024

COLORADO COURT OF APPEALS

---

Court of Appeals No. 23CA2047
Adams County District Court No. 21CV31285
Honorable Teri L. Vasquez, Judge

---

Neolia Johnson,

Plaintiff-Appellee,

v.

Estate of Carlos Ortiz,

Defendant-Appellee,

and

Carol Adams,

Intervenor-Appellant.

---

ORDER AFFIRMED

Division VII
Opinion by JUDGE SCHUTZ
Tow and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced November 21, 2024

---

O'Brien Law Firm, LLC, Shauna O'Brien, Lafayette, Colorado, for Plaintiff-Appellee

Gantenbein Law Firm LLC, Keith Gantenbein, Christopher Turner, Christoper Pike, Denver, Colorado, for Defendant-Appellee

Law Office of Gary D. Fielder, Gary D. Fielder, Denver, Colorado, for Intervenor-Appellant

¶ 1     Intervenor, Carol Adams, appeals the district court's order approving the settlement agreement between plaintiff-appellee, Neolia Johnson, and defendant-appellee, the Estate of Carlos Ortiz (the Estate).  We affirm the district court's order.

## I.     Background and Procedural History

### A.     The Initial Partition Proceedings

¶ 2     Johnson's husband and Ortiz's wife were siblings.  A few years after their spouses died, Johnson and Ortiz agreed to cohabit in a single-family residence in Westminster (property).  At the time, Ortiz owned the property.

¶ 3     In 1994, Ortiz placed a lien on the property as collateral to secure a bond posted on his son's behalf.  The bond was later forfeited.  Ortiz feared he would lose the property because of the default.  Thereafter, Ortiz and Johnson obtained a loan to satisfy the lien associated with the bond.  To secure that loan, Johnson was made a co-owner of the property, and she subsequently contributed to the mortgage and other home expenses.

¶ 4     Around 2020, Johnson decided to move out of the property. She commenced this partition action against Ortiz in 2021 after the parties could not reach an agreement about how their interests in

1

the property would be divided.  In 2023, Ortiz died.  Adams is Ortiz's daughter.  After his death, she produced his purported will.  Adams is one of two identified beneficiaries in the will.[1]

B.    The Probate Proceedings and Settlement Agreement

¶ 5    In March 2023, Johnson filed a petition for the adjudication of intestacy and moved to appoint the Public Administrator of the Seventeenth Judicial District, Christopher Turner, as the Estate's personal representative.  Adams objected to Turner's appointment.  In view of her status as an asserted beneficiary of the Estate, Adams requested that she be substituted for Ortiz as the defendant and counterclaimant in the present action.  The district court denied the motion.  The court instead issued an order substituting the Estate for Ortiz and set a hearing to determine whether Adams should nonetheless be permitted to intervene in this case pursuant to C.R.C.P. 24.

---

[1] The validity of Ortiz's will was contested in Adams County Case No. 23PR30205.  The probate matter was not resolved when the district court issued its order approving the settlement agreement.

¶ 6     At the hearing, neither Johnson nor the Estate objected to Adams's intervention.  The court then set the matter for a three-day jury trial in October.

¶ 7     Adams subsequently moved to dismiss the Estate's legal counsel and Turner on the basis that their representation was unnecessary because she was the personal representative for her father's estate.  The district court denied both motions after finding that Adams had asserted no factual or legal basis for the requested relief.

¶ 8     Adams asserted no affirmative claims for relief in the action.  Nevertheless, she participated in the preparation of the case management and trial management orders.  In the trial management order, Adams set forth her factual contentions and what she thought would be an appropriate resolution of the partition action.  Therein, Adams also stipulated that she was "not an owner of the property" and that she claimed an interest in the property only "as a beneficiary of the [E]state."

¶ 9     At the trial management conference, Johnson and the Estate informed the court that they had reached a settlement that resolved all outstanding claims between them.  Adams did not approve of the

settlement. The district court ordered Johnson and the Estate to file a motion to approve the settlement and allowed Adams to file any objection within seven days.

¶ 10 Johnson and the Estate timely filed their motion to approve the settlement of their claims. The settlement apportioned 70.5% of the property's equity to the Estate and 29.5% to Johnson. Adams timely objected to the proposed settlement and asked the court to proceed with the trial.

- The Estate claimed at least a 75% ownership interest in the property, and the corresponding right to receive 75% of the net proceeds from the property's sale.

- Johnson claimed at least a 25% ownership interest in the property and the right to 50% of any proceeds from its sale based on her ownership interests and past mortgage payments.

- If the partition case proceeded to trial, the Estate was likely to incur additional attorney fees in the amount of $39,000 ($10,000 per trial day and $9,000 for trial preparation).

- The additional fees would result in a reduction in the amounts available to distribute to the Estate's beneficiaries, including

Adams, and therefore, settlement was in the best interest of the Estate and its beneficiaries.

- Adams's status as a beneficiary did not give her an ownership interest in the property and she had asserted no claims for relief against Johnson.

- Adams was not a real party in interest to the partition action and she had no legal basis to object to the settlement.

¶ 11 In her response, Adams asserted that Johnson engaged in fraudulent conduct, the breakup between Johnson and Ortiz was "unfair," and the attorneys representing Johnson and the Estate had a conflict of interest because they had worked together on other cases.

¶ 12 The district court approved the settlement agreement and vacated the trial. The court largely adopted the arguments asserted by Johnson and the Estate, concluding that (1) Adams had no ownership interest in the property and no direct claims against Johnson; (2) Adams's rights as a potential beneficiary of the Estate were adequately protected by the personal representative; and (3) the settlement agreement was in the best interest of the Estate and any of its beneficiaries, including Adams.

¶ 13 On appeal, Adams contends that the district court erred by approving the settlement agreement over her objection because her status as an intervenor gave her the same rights as the original parties, including the right to reject the settlement agreement. Adams also argues that the district court violated her due process rights by not allowing the matter to proceed to trial.

## II. Approval of the Settlement Agreement

¶ 14 Adams contends that her status as an intervenor gives her the same rights as the original parties, and therefore the district court erred when it accepted the settlement agreement over her objection. We disagree.

## A. Preservation and Standard of Review

¶ 15 The Estate contends that Adams's claims are unpreserved because she failed to file any meaningful pleadings in the district court. However, we conclude that Adams adequately preserved her claim through her objection to the proposed settlement. *People v. Tallent*, 2021 CO 68, ¶ 12 (To preserve a claim for appeal, a party must make an objection "specific enough to draw the trial court's attention to the asserted error.") (citation omitted).

¶ 16    Because determining the rights of an intervenor under C.R.C.P. 24 presents a question of law, we review de novo Adams's contention that the district court erred by approving the settlement agreement over her objection. *See Feigin v. Alexa Grp., Ltd.*, 19 P.3d 23, 28 (Colo. 2001) (adopting de novo standard of review for determining whether a district court erred by denying a motion to intervene as a matter of right). However, we review the district court's approval of the term of a settlement agreement for an abuse of discretion. *See Thomas v. Rahmani-Azar*, 217 P.3d 945, 947-48 (Colo. App. 2009) (applying the abuse of discretion standard regarding the approval of a class action settlement). A court abuses its discretion if its ruling is manifestly arbitrary, unreasonable, or unfair, or is based on a misunderstanding or misapplication of the law. *Bd. of Cnty. Comm'rs v. DPG Farms, LLC*, 2017 COA 83, ¶ 34.

### B.    Applicable Laws

#### 1.    Partition

¶ 17    A party with an interest in real property may bring a claim for the division and partition of the property. § 38-28-101, C.R.S. 2024. All persons with any interest, whether it be direct, indirect, beneficial, or contingent in such property must be made parties to

the action.  § 38-28-102, C.R.S. 2024.  The court must completely adjudicate the rights of all parties to the property, § 38-28-103, C.R.S. 2024, and may make any such orders that it deems necessary "to promote the ends of justice to completely adjudicate every question and controversy concerning the title, rights, and interest of all persons . . . ."  § 38-28-110, C.R.S. 2024.

### 2.    Intervention

¶ 18    Rule 24 permits individuals to intervene in a matter as of right or permissively.  To intervene as of right the intervenor must show (1) that a statute confers an unconditional right to intervene or (2) that the intervenor claims an interest related to the property that is the "subject of the action and [they are] so situated that the disposition of the action may as a practical matter impair or impede [their] ability to protect that interest, unless the [intervenor's] interest is adequately represented by existing parties."  C.R.C.P. 24(a).

¶ 19    If the intervenor cannot be added as of right, a court may still allow for permissive intervention upon a showing that an applicant's "claim or defense and the main action have a question of law or fact in common."  C.R.C.P. 24(b).

¶ 20    An intervenor is not conferred party status simply by virtue of their presence in a case. *Harris v. Amoco Prod. Co.*, 768 F.2d 669, 675 (5th Cir. 1985). As the Court of Appeals for the Fifth Circuit explained:

> [A] permissive intervenor [falls] somewhere in the gray area between spectator and participant. . . . Generally, these grounds exist where, as here, the intervenor relies on having satisfied a conditional statutory right to intervene. However, the intervenor's mere presence in an action does not clothe it with the status of an original party. To be sure, there are some senses in which an "intervenor is treated as if he were an original party and has equal standing with the original parties." The permissive intervenor can, among other things, move to dismiss the proceeding and can challenge the subject matter jurisdiction of the district court. But these participatory rights remain subject to the intervenor's threshold dependency on the original parties' claims, for it is equally well-settled that "[a]n existing suit within the court's jurisdiction is a prerequisite of an intervention, which is an ancillary proceeding in an already instituted suit."

¶ 21    *Id.* (citations omitted). Nevertheless, if an intervenor has asserted affirmative independent claims for relief, it may be permitted to pursue such claims even if the original parties' underlying claims are resolved. *Id.* at 675-76.

9

¶ 22     Whether proceeding under a theory of intervention as a matter of right or permissive intervention, C.R.C.P 24(c) provides that "[a] person desiring to intervene shall serve a motion to intervene upon the parties as provided in [C.R.C.P.] 5." *See also* C.R.C.P 7(a) (describing the limited types of pleadings permitted in a civil action). Despite this obligation, Adams did not file a pleading with her motion to intervene. But recall that, in the trial management certificate, she stipulated that she claimed an interest in the property "as a beneficiary of the Estate" and that she "is not an owner of the property." Thus, any "claim" or "right of recovery" asserted by Adams is solely dependent upon her status as a potential beneficiary of the Estate.

### 3.    Personal Representatives

¶ 23     A personal representative is a fiduciary with a duty to settle and distribute the decedent's estate "in accordance with the terms of any probated and effective will and [the Colorado Probate Code], and as expeditiously and efficiently as is consistent with the best interests of the estate." § 15-12-703(1), C.R.S. 2024. Personal representatives are vested with broad authority to facilitate their duties. *Fry & Co. v. Dist. Ct.*, 653 P.2d 1135, 1137 (Colo. 1982).

They have the authority to represent all owners who derive their interests through the estate, and as such, are permitted to act on behalf of an estate's beneficiaries in a partition action. *Id.* at 1139.

¶ 24    Personal representatives are presumed to provide adequate representation of the Estate beneficiaries' interests. *In re Estate of Scott,* 577 P.2d 311, 313 (Colo. App. 1978). Accordingly, a personal representative represents "all owners who derive their interests through the estate." *Fry,* 653 P.2d at 1139. Thus, when a personal representative is a party to a partition action involving estate property, beneficiaries of the estate are not indispensable parties and do not have a statutory right to intervene. *Id.*

## C.    Application

¶ 25    The district court did not enter a written order addressing the motion for intervention, and thus did not explain whether it granted Adams's motion to intervene as a matter of right or permissively. Adams points to a minute order entered after the hearing at which the motion to intervene was filed, which states that she will be "added as an intervenor to [sic] party." From this statement, Adams argues that she was granted full party status as an intervenor. But Adams does not dispute that she asserted no claims in this case

11

and that her interest was based solely on her status as an Estate beneficiary.

¶ 26    Because the district court approved the Estate's substitution motion, the only parties to the partition claims are Johnson and the Estate. The personal representative represents the Estate's interests. Our appellate courts have recognized that absent a showing of bad faith, collusion, negligence, or conflict of interest, a personal representative adequately protects the interest of a beneficiary:

> When the law created a mechanism whereby one person as a representative of a group could conduct litigation, the purpose was the efficient, speedy, and orderly determination of rights which were held in common. For the courts to grant intervention to any member of a represented class who disagrees with the decisions of the representative, solely on that basis, would in our view defeat the entire purpose of representative litigation. A personal representative, under such a rule, would always be in danger of losing the ability to represent and act for the estate and might well find himself relegated to a position of looking on as the affairs of the estate became hopelessly entangled. It seems hardly likely that the General Assembly when it clothed the personal representative with far reaching affirmative powers, could have intended for his position to be so fragile.

12

¶ 27 *Scott*, 577 P.2d at 313.

¶ 28 So, even though the district court did not expressly state whether intervention was permissive or as of right, because there was no basis for Adams to intervene as a matter of right and her interest as a potential beneficiary of the Estate was adequately represented by the personal representative, we conclude as a matter of law that she was a permissive intervenor under C.R.C.P. 24(b).

¶ 29 Adams provides no support, and we are aware of no authority that empowers permissive intervenors with the same rights as the original parties. Adams cites *A.M. v. A.C.*, 2013 CO 16, for the proposition that in a dependency and neglect adjudication, intervening foster parents are "afforded the same degree of participation as all other parties." *Id.* at ¶ 20. However, *A.M.* is factually and legally distinguishable. There, the foster parents were statutorily permitted to intervene as of right. *See* § 19-3-507(5)(d), C.R.S. 2024. Here, Adams is a permissive intervenor. Moreover, the right of full participation does not give the intervenor the ability to reject a settlement agreement on a claim to which the intervenor is not a party. *Local No. 93, Int'l Ass'n of Firefighters v. City of Cleveland*, 478 U.S. 501, 529 (1986) ("[W]hile an intervenor is

entitled to present evidence and have its objections heard at the hearings on whether to approve a consent decree, it does not have power to block the decree merely by withholding its consent.").

¶ 30 In the present matter, Adams raises no claim that Turner's representation was inadequate and also fails to provide any authority to support her contention that her status as a permissive intervenor gave her the ability to upend the settlement agreement between the Estate and Johnson. Therefore, the district court did not err by accepting the settlement agreement over Adams's objection.

¶ 31 Nor do we perceive any abuse of discretion in the district court's decision to approve the terms of the settlement agreement. As the court noted, the disputed amount of anticipated sale proceeds was negligible compared to the potential attorney fees that the parties would accumulate if the matter proceeded to trial and the risk that the jury may evaluate the Estate's equity in the property as less than 70.5%.

¶ 32 There also was no evidence to support Adams's contention that she was entitled to the entire property because she has no current interest in the property and her interest as a potential

beneficiary of the Estate was adequately protected by the personal representative who approved of the settlement. Finally, the district court found no record support for Adams's conclusory allegations that the settlement was attributable to any conflict of interest or improper action by Turner.

¶ 33 Given these findings, which are supported by the record, we cannot conclude that the district court abused its discretion by approving the settlement agreement.

### D. Due Process Claim

¶ 34 Adams also contends that the district court violated her right to due process by accepting the settlement agreement because it prevented her from presenting evidence at the trial. We disagree.

¶ 35 Because we conclude that Adams's status as a permissive intervenor does not make her a party to the partition claims, it necessarily follows that she did not have a right to reject the settlement so that she could present evidence at a trial. As a permissive intervenor, Adams had the right to be heard on the question of whether the settlement should be approved. *Local No. 93*, 478 U.S. 501 at 529. But she did not have the right to force the partition claim to a trial. *See United States v. Carpenter*, 526 F.3d

15

1237, 1240 (9th Cir. 2008) ("We recognize that the intervenors whose claims are not the subject of a settlement cannot veto that settlement.").

¶ 36    Because Adams did not file a pleading setting forth any claims or defenses of her own, she was not entitled to a trial once the underlying partition claim between Johnson and the Estate was resolved.  The district court afforded Adams the right to be heard on the propriety of the settlement agreement.  That was the process to which she was entitled.  Accordingly, the court did not violate her due process rights by preventing her from vetoing the resolution of claims that the asserting and defending parties had resolved.

### III.    Attorney Fees

¶ 37    Johnson requests an award of costs and attorney fees incurred in the district court and on appeal.  With respect to Johnson's request for an award of attorney fees incurred before the district court, we have no authority to make such an award because it was not presented to or decided by the district court.  *See Crown Life Ins. Co. v. Haag Ltd. P'ship*, 929 P.2d 42, 45 (Colo. App. 1996) (declining to address issue not presented to the trial court).

¶ 38    Johnson also contends that she is entitled to an award of attorney fees incurred on appeal because Adams's appellate contentions were frivolous, groundless, and vexatious. Section 13-17-102, C.R.S. 2024, provides that a court shall award attorney fees against any party who has defended a civil action, in whole or in part, that lacked substantial justification. § 13-17-102(2). As used in the statute, the phrase "'[l]acked substantial justification' means substantially frivolous, substantially groundless, or substantially vexatious." § 13-17-102(9)(a). In cases involving a self-represented party, like Adams, the moving party must also demonstrate that "the party clearly knew or reasonably should have known that the party's action or defense, or any part of the action or defense, was substantially frivolous, substantially groundless, or substantially vexatious." § 13-17-102(6).

¶ 39    Aside from the conclusory assertion that Adams's arguments were colored by her emotions, Johnson makes no effort to develop her contention that Adams's arguments or conduct on appeal were frivolous, groundless, or vexatious. Thus, we decline to address the issue further. *See Holley v. Huang*, 284 P.3d 81, 87 (Colo. App. 2011) (declining to address undeveloped contentions).

17

## IV.   Disposition

The district court's order is affirmed.

JUDGE TOW and JUDGE PAWAR concur.